IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sarkis Shaltapour,<br><br>　　　　　Petitioner,<br><br>v.<br><br>John Cantu, et al.,<br><br>　　　　　Respondents. | No. CV 25-03995 PHX DWL (CDB)<br><br>**REPORT AND RECOMMENDATION** |

**TO THE HONORABLE DOMINIC W. LANZA:**

Petitioner Sarkis Shaltapour seeks relief pursuant to 28 U.S.C. § 2241. At the time the petition was filed Shaltapour was in custody at the Florence Immigration Detention Facility in Florence, Arizona.[1] The Court described the § 2241 petition, filed October 26, 2025, as follows:

> Petitioner states he fled to the United States from Iraq and was a lawful permanent resident alien from 1983 to 2011. He claims he was ordered removed in absentia in 2011, but the Board of Immigration Appeals granted his Motion to Reopen Proceedings. Petitioner contends that in 2019, the Immigration Court denied his application for asylum, ordered him removed, but granted a deferral of removal pursuant to the Convention Against Torture. He alleges he was released from custody in 2021 on an order of supervision and has complied with the conditions of his release. At some point, ICE re-detained Petitioner; he is currently in ICE custody.
> 
> In Ground One, Petitioner alleges he has been denied his Fifth Amendment right to procedural due process. He claims he has a "vested liberty interest in his conditional release" and the government cannot "strip

---

[1] A search of the U.S. Immigration and Customs Enforcement Online Detainee Locator System on December 17, 2025, indicates that Shaltapour is currently in custody at the Imperial Regional Adult Detention Facility in California.

him of that liberty" without first providing a hearing before a neutral adjudicator.

In Ground Two, Petitioner contends he has been denied his Fifth Amendment right to substantive due process. He asserts he has a "vested liberty interest in his conditional release" and the government cannot "strip him of that liberty without it being tethered to one of the two constitutional bases for civil detention: to mitigate against the risk of flight or to protect the community from danger." Petitioner claims his detention, without a hearing, is punitive because he has complied with the conditions of his release and is neither a flight risk nor a danger to the community.

In Ground Three, Petitioner claims Respondents' decision to revoke his release is unlawful, arbitrary, capricious, and an abuse of discretion. He asserts he was previously released because he did not pose a danger and was not a flight risk and Respondents only have authority to revoke his release if circumstances have changed. He contends he should be provided with a "full and fair hearing before a neutral arbiter where the government bears the burden of showing that circumstances have changed[,] such that his removal is reasonably foreseeable, and otherwise evidence of his dangerousness and flight risk is established by clear and convincing evidence."

In Ground Four, Petitioner alleges that pursuant to the Immigration and Naturalization Act and its applicable regulations, Respondents cannot detain him "on the basis of his prior order of removal" without establishing, "by clear and convincing evidence, that his removal is reasonably foreseeable and that he is a danger to the community or a flight risk."

In Ground Five, Petitioner alleges a Fifth Amendment procedural due process violation claiming that removing him to a third country without adequate notice and an opportunity to apply for relief under the Convention Against Torture would violate his due process rights.

(ECF No. 6 at 1-3). The Court ordered Respondents to answer the Petition. In their response to the petition Respondents state, in total:

Respondents, by and through counsel, hereby respond to the Petition for a Writ of Habeas Corpus (Doc. 1). Undersigned counsel is unable to ascertain sufficient facts at this time to establish that there is a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). Accordingly, Respondents do not oppose Petitioner's request for release at this time.

(ECF No. 13 at 1).

Respondents do not dispute any of the following facts alleged in the petition. Shaltapour was born in Iraq. In 1983 Shaltapour obtained lawful permanent residence as a

- 2 -

refugee. In 1987 Shaltapour was convicted of attempted armed robbery. In 2001, Shaltapour was convicted of possessing cocaine. Shaltapour has not been convicted of any crime since 2001. Shaltapour was ordered removed, *in abstentia*, by the Immigration Court on October 11, 2011. In 2013, the Board of Immigration Appeals ("BIA") granted Shaltapour's motion to reopen his removal proceedings based on materially changed conditions for Christians in Iraq. Shaltapour then applied for asylum. On October 16, 2019, the Immigration Court denied his application for asylum and ordered him removed to Iran, but granted him deferral of removal pursuant to the Convention Against Torture ("CAT").[2] At some point during his removal proceedings Shaltapour was detained by Immigrations and Customs Enforcement ("ICE") "and subsequently released on an OSUP [order of supervision]." (ECF No. 1 at 11). Shaltapour has obtained work authorization pursuant to 8 C.F.R. § 241.5, and Shaltapour lived and worked in and around Phoenix, Arizona.

At some point prior to the date his § 2241 petition was filed, Shaltapour was detained by ICE. Shaltapour was not given any form of hearing prior to or after his detention.

Citing 8 C.F.R. § 241.13(i),[3] Shaltapour contends that because ICE does not have a travel document for him, his removal is not reasonably foreseeable. He asserts that because

---

[2] The petition states: "On October 16, 2019, the Immigration Court denied [Shaltapour's] application for asylum, and ordered him removed to Iran, but granted him deferral of removal pursuant to the Convention Against Torture ('CAT')." (ECF No. 1 at 3).

[3] 8 C.F.R. § 241.13(i) provides, in pertinent part:
(2) Revocation for removal. The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. Thereafter, if the alien is not released from custody following the informal interview provided for in paragraph (h)(3) of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal.
(3) Revocation procedures. Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any

no travel document has been issued, there is no reasonably foreseeable end point to his detention and therefore his detention will be unconstitutionally prolonged in violation of federal law and his constitutional rights.

Shaltapour also argues there has been no change in circumstances since he was granted deferral of removal warranting his detention. Shaltapour contends, and Respondents do not dispute, that the deferral of removal has not been terminated. Shaltapour argues that his detention is unconstitutional because it is in violation of United States statutes and regulations, because it is absent any pre-deprivation hearing before a neutral arbiter. He further asserts he is neither a flight risk nor a danger to the community. Shaltapour also maintains he is entitled to a hearing before being removed to any third country. Shaltapour asserts he must be released from detention unless and until ICE proves to a neutral arbiter that his removal has become reasonably foreseeable, or that his detention is necessary because there has been a material change in circumstances establishing that he is a flight risk or a danger to the community.

The Constitution guarantees the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004), *citing* U.S. Const., art. I, § 9, cl. 2. The purpose of the "great writ," which is "shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968) (citations omitted). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Immigration & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 301 (2001) (citations omitted), *superseded by statute on other grounds*, *Nasrallah v. Barr*, 590 U.S. 573, 580 (2020). Accordingly, the Court has jurisdiction to grant writs of habeas corpus to noncitizens who are being detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). *See also Trump v. J.G.G.*,

---

contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

604 U.S. 670, 672 (2025); *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention …").

Following a final order of removal, ICE is directed by statute to detain an individual for ninety days in order to effectuate their removal from the United States. 8 U.S.C. § 1231(a)(2). This ninety (90) day period, known as "the removal period," generally commences as soon as a removal order becomes administratively final. *Id.* at §§ 1231(a)(1)(A) & 1231(a)(1)(B). If the individual is not removed during the removal period, federal law requires ICE to release the individual under conditions of supervision, including periodic reporting. 8 U.S.C. § 1231(a)(3) ("If the alien … is not removed within the removal period, the alien, pending removal, shall be subject to supervision."). Limited exceptions to this rule exist, i.e., ICE "may" detain an individual beyond ninety days if the individual was ordered removed on criminal grounds or is determined to pose a danger to the community or determined to be a flight risk. *See* 8 U.S.C. § 1231(a)(6). However, ICE's authority to detain an individual beyond the removal period under such circumstances is constrained by the constitutional requirement that the individual's detention must "bear a reasonable relationship to the purpose for which the individual [was] committed." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Because the principal purpose of the post-final-order detention statute is to effectuate the removal of the detainee, if the individual's removal cannot be effectuated it follows that their detention bears no reasonable relation to the purpose for which the individual is detained. *Id.* at 697.

The governing statute does not explicitly limit the length of post-removal-period detention. *See* 8 U.S.C. § 1231(a)(6). Because a statute that authorizes "indefinite, perhaps permanent" detention poses a "serious constitutional threat," the Supreme Court has "read an implicit limitation" into § 1231(a)(6) "in light of the Constitution's demands." *Zadvydas*, 533 U.S. at 680, 689. *See also Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021). Specifically, in *Zadvydas* the Supreme Court held that a noncitizen may be detained only for "a period reasonably necessary to bring about" the noncitizen's removal from the

United States. 533 U.S. at 689. Moreover, the *Zadvydas* Court held that the period "reasonably necessary" to "secure" a noncitizen's removal is *presumptively* six months. *Id.* at 699-701. After this six-month period, if a detainee makes a sufficient showing their removal is not significantly likely in the "reasonably foreseeable future," the government must respond with evidence sufficient to rebut that showing. *Guzman Chavez*, 594 U.S. at 529. If the government fails to provide such evidence, the detainee must be released. *Id.* Accordingly, pursuant to the principles espoused in *Zadvydas* and *Guzman Chavez*, post-removal-period detention violates the Immigration and Nationality Act and the United States Constitution when a non-citizen's removal is not significantly likely in the reasonably foreseeable future.

The parties allow that Shaltapour's order of removal is final, and that Shaltapour was granted deferral of removal pursuant to CAT. Respondents do not dispute that Shaltapour was at some point previously detained for a period of at least some months.[4] Respondents do not dispute that, since Shaltapour's order of removal became final and he

---

[4] When determining whether the noncitizen has been detained for six months past the removal period, the district courts within the jurisdiction of the Ninth Circuit Court of Appeals consider the full amount of time that the noncitizen has spent in immigration detention since they were ordered removed, i.e., the courts total multiple periods of detention in the aggregate. Otherwise, the government could circumvent the relevant statute by detaining and releasing and re-detaining noncitizens such that they are never continuously detained for six months, which would constitute de facto indefinite detention. *See*, *e.g.*, *Nguyen v. Scott*, 796 F. Supp. 3d 703, 722 (W.D. Wash. 2025) ("under the reasoning of *Zadvydas*, a series of releases and re-detentions by the government ... in essence results in an indefinite period of detention, albeit executed in successive six month intervals." (internal quotations omitted, ellipses in original)); *Phan v. Warden of Otay Mesa Det. Facility*, No. 25-cv-02369, 2025 WL 3141205, at *3 (S.D. Cal. Nov. 10, 2025) (collecting cases). Moreover, as the Court recently held, a detainee is eligible for release even before six months of detention if they meet a heightened burden of establishing their removal is not reasonably foreseeable. *See Sweid v. Cantu*, No. 25-03590, 2025 WL 3033655, at *3-4 (D. Ariz. Oct. 30, 2025) (collecting cases, including *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 396 (D.N.J. 2025) ("Although some courts have read *Zadvydas* as creating a bright-line rule—one that effectively allows the government to detain a person for at least six months without judicial review, even if there was no possibility of removal—a close reading of *Zadvydas* does not support that interpretation."), and *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1093 (C.D Cal. 2020) ("*Zadvydas* established a 'guide' for approaching detention challenges, not a categorical prohibition on claims challenging detention less than six months.")).

1 was granted deferral of removal, he has not committed any crime nor has there been any other changed circumstance which would warrant Shaltapour's current detention.

Shaltapour plausibly alleges there is no good reason to believe that his removal is significantly likely in the reasonably foreseeable future. Shaltapour asserts, and Respondents do not dispute, that ICE has been unable to deport him over the last six years. The burden thus shifts to Respondents to "respond with evidence sufficient to rebut that showing," *Zadvydas*, 533 U.S. at 701, a burden Respondents have declined to bear. To the contrary, Respondents allow that Shaltapour should be released at this time. Respondents have not provided a legal basis for Shaltapour's continued detention given the facts stated in the Petition, which facts Respondents do not dispute.

Because Shaltapour is being held in custody in violation of the laws of the United States and in violation of his Constitutional rights, relief pursuant to § 2241 is warranted. Accordingly, on the facts and relevant law, and on the basis of Respondents' consent,

**IT IS RECOMMENDED that** the petition for § 2241 at ECF No. 1 be **granted**, and that Respondents be ordered to release Shaltapour immediately, and that Respondents be required to docket a notice of compliance with any order issued by the Court.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

Rule 72(b), Federal Rules of Civil Procedure, provides that the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. However, because Respondents do not object to Shaltapour's release,

**IT IS FURTHER RECOMMENDED that** the Court order any objections to the Report and Recommendation be filed **no later than December 23, 2025**.

Pursuant to Rule 7.2(e)(3) of the Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed ten (10) pages in length. Failure to timely file objections

to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. *See United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Dated this 17th day of December, 2025.

_____
Camille D. Bibles
United States Magistrate Judge